IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN W. COSTELLO, not individually, but as Litigation Trustee under the Comdisco Litigation Trust, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No.   05 C 0726<br>) |
| JULIUS G. HALLER | ) Judge Robert W. Gettleman<br>) |
| Defendant, | )<br>) |
| | ) Reassigned for preliminary proceedings: |
| THOMAS J. PREDERGAST, | ) No.      05 C 0727 |
| BRYANT COLLINS, | )            05 C 0728 |
| PAUL SANFILLIPPO, | )            05 C 0729 |
| MICHAEL F. HERMAN, | )            05 C 0731 |
| JOHN A. BLAIR, | )            05 C 0732 |
| MICHAEL G. MCFARLAND, | )            05 C 0733 |
| PETER HUBER, | )            05 C 0734 |
| ALLEN J. GRAHAM, | )            05 C 0735 |
| MIKE J. POISELLA, | )            05 C 0736 |
| CLAUS DUERR, | )            05 C 0737 |
| MICHAEL COTHENET, | )            05 C 0738 |
| DAVID S. COONS, | )            05 C 0739 |
| ROMAN BRUNNER, | )            05 C 0740 |
| RICHARD D. FRANK, | )            05 C 0741 |
| KEITH TILLEY, | )            05 C 0745 |
| JOSEPH J. SCOZZAFAVA, | )            05 C 0746 |
| KEITH M. OLENEK, | )            05 C 0761 |
| STEVEN R. GRUNDON, | )            05 C 0763 |
| GREGORY A. WEISS, | )            05 C 0764 |
| CHARLES A. DALE, | )            05 C 0766 |
| DEAN J. PROKOS, | )            05 C 0767 |
| STEPHEN J. MCFARLAND, | )            05 C 0769 |
| JAMES D. JENKS, | )            05 C 0770 |
| HAROLD L. FINKEL, | )            05 C 0771 |
| JEFFERY D. KNAUS, | )            05 C 0772 |
| MARTIN HAUSLER, | )            05 C 0773 |
| OTTO HARDER, | )            05 C 0774 |
| FREDERIC LOUISY, | )            05 C 0775 |
| LYSSA R. PAUL, | )            05 C 0776 |

| THOMAS FLOHR, | ) | 05 C 0778 |
| ORRY D. DUBOIS, | ) | 05 C 0780 |
| JEFFREY R. SCHWIERING, | ) | 05 C 0781 |
| JOSEPH D. HOLD, | ) | 05 C 0782 |
| DANIEL ORR, | ) | 05 C 0783 |
| JAMES D. DUNCAN, | ) | 05 C 0789 |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff John W. Costello, not individually but as Litigation Trustee under the Comdisco Litigation Trust, has sued defendants in these related cases seeking to enforce defaulted promissory notes. Defendants, Claus Duerr (Case No. 05 C 737) and Keith Tilley (Case No. 05 C 745), both foreign citizens, have moved to dismiss for lack of personal jurisdiction, forum non conveniens, and under the principles of comity. Federal diversity jurisdiction is founded on 28 U.S.C. § 1332. For the reasons set forth below, the motions are denied.

**BACKGROUND**

All defendants in these related cases are former employees of Comdisco, Inc. and its subsidiaries. Defendant Duerr, a citizen and resident of Germany, was employed by Comdisco Germany, GmbH, in Germany. Defendant Tilley is a citizen and resident of the United Kingdom and was employed by Comdisco Services, U.K., Ltd. in England. During January 1998 each defendant was asked to enter into a stock option/loan plan called the Comdisco Shared Investment Plan ("SIP"), under which the employee ("participant") purchased shares of Comdisco "old" common stock ("SIP shares"). One hundred percent of the purchase price was financed by loans from lender banks to the participants. The loans were guaranteed by Comdisco, as evidenced by master promissory notes ("SIP notes"). Comdisco received the loan

2

proceeds directly from the lenders and held the SIP shares as collateral. The guarantee was documented in a Facility and Guarantee Agreement. The employees who agreed to participate in the SIP did not receive any of the loan proceeds or the SIP shares.

In January 2001, Comdisco filed for bankruptcy, an event of default under the SIP notes causing the lenders to accelerate the full amounts due. The Comdisco Plan of Reorganization ("Plan") authorized creation of a litigation trust and the appointment of a litigation trustee to liquidate and distribute trust assets. Some of those assets were defined as SIP subrogation claims, which are the claims Comdisco has against any SIP participant resulting from payments Comdisco made to the lenders under the Guaranty. As a result, the litigation trustee has brought the instant lawsuits including the actions against defendants Duerr and Tilley.[1]

## DISCUSSION

Both defendants Duerr and Tilley have moved to dismiss arguing that this court lacks personal jurisdiction over them. Plaintiff bears the burden of establishing a prima facie case of personal jurisdiction. Hyatt International Corp. v. CoCo, 302 F.3d 707, 713 (7th Cir. 2002). When determining whether personal jurisdiction exists over a defendant, "the allegations in the complaint are to be taken as true unless controverted by the defendants' affidavits and any conflicts in the affidavits are to be resolved in [the plaintiff's] favor." Turnock v. Cope, 816 F.3d 332, 333 (7th Cir. 1987).

This court has jurisdiction over a non-resident, non-consenting defendant in a diversity case if Illinois state courts would have jurisdiction. Hyatt, 302 F.3 at 713; RAR, Inc. v. Turner

---

[1] A more complete discussion of the underlying events and agreements can be found in the court's September 23, 2005, Memorandum Opinion and Order denying defendants' motions to dismiss. Costello v. Haller, 05 C 726 (N.D. Ill. Sept. 23, 2005).

Diesel, Ltd., 107 F.3d 1272, 1275 (7th Cir. 1997). An Illinois state court has personal jurisdiction when authorized by: (1) the Illinois long-arm statute; (2) the Illinois Constitution; and (3) the Due Process Clause of the federal Constitution. Central States, S.E. & SW Area Pension Funds v. Reimer, 230 F.3d 934, 939 (7th Cir. 2000). The Illinois long-arm statute provides that an Illinois court "may exercise jurisdiction on any . . . now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c).

Because the Illinois long-arm statute authorizes personal jurisdiction to the constitutional limits, the three part analysis collapses into two constitutional inquires – one state and one federal. RAR, 107 F.3d at 1276. Although the Illinois Supreme Court has indicated that the Illinois constitutional due process requirement is distinct from the federal requirement, the Seventh Circuit has suggested that there is no operative difference between the limits imposed by the Illinois Constitution and the federal imitations, blending two constitutional analyses into one. Hyatt, 302 F.l3d at 715. Therefore, the sole question is whether the court's assertion of personal jurisdiction over Duerr and Tilley would comply with federal due process.

The Due Process Clause of the Fourteenth Amendment places limits on when a state may assert personal jurisdiction over a non-resident defendant. RAR, 107 F.3d at 1277. A non-resident defendant must have certain minimum contacts with the state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." Id. (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). How that standard is applied depends on whether plaintiff is asserting "general" or "specific" jurisdiction. Specific jurisdiction refers to instances where the suit is "arising out of or related to the defendant's contacts with the forum." Id. (quoting Helicopteros Nacionales de Columbia, S.A. v. Hall, 466

4

U.S. 408, 414 n. 8 (1989)). In the instant case, plaintiff asserts specific jurisdiction over defendant's Duerr and Tilley.

Jurisdiction over the defendants is proper, therefore, only if they have purposely established minimum contacts with Illinois and those contacts are sufficient, under traditional standards, to make jurisdiction fair and reasonable under the circumstances. RAR, 107 F.3d at 1277. The crucial analysis is whether Duerr and Tilley should have reasonably anticipated being haled into court in Illinois because they have purposely availed themselves of the privilege of conducting activities here. Id. Both Duerr and Tilley argue that they have had little or no contact with the state of Illinois. Duerr received and executed the SIP documents in his home country. Tilley participated in a conference in California where he received the documents, while Duerr participated in that conference via telephone from his home country. Each defendant's place of business is in his home country. Thus, both argue that they had "absolutely no contact with and conducted no activity in Illinois in connection with the SIP," and consequently had insufficient contact with Illinois to render haling them into court here fair and reasonable.

The flaw in this argument is that personal jurisdiction is waivable, see IFC Credit Corp. v. Aliano Bros. General Contracts, Inc., 437 F.3d 606 (7th Cir. 2006), and the notes that Duerr and Tilley each signed contained a choice of law clause and a consent to jurisdiction and venue clause indicating that the note in question would be construed under Illinois law and that the defendants consent to jurisdiction and venue in any United States federal or Illinois state court sitting in Chicago. Both clauses are in all capital letters and are located immediately preceding the signature line.

Actual consent to a state's jurisdiction is enough by itself to satisfy any due process concerns. Ins. Corp. of Ireland v. Campagine des Bauxite de Guniee, 456 U.S. 694, 703-04 (1982). Obviously, one who consents to be sued in a particular forum can reasonably anticipate being sued there. As Judge Moran has stated, "[t]here is nothing fundamentally unfair or surprising in a state's exercise of jurisdiction over a defendant who has consented in writing to submit to its jurisdiction. A party to a contract is presumed to have read the contract he signed, so that a consent-to-jurisdiction clause itself is grounds enough for anticipating that he would be subject to suit in that jurisdiction." Rosenthal & Co. v. Rosario, 1987 WL 13606 at *2 (N.D. Ill. 1987) (citing Ins. Corp., 456 U.S. at 704). Indeed, the Supreme Court has stated that the presence of a choice of law provision alone tends to indicate that a party to the contract should foresee litigation in that jurisdiction because by selecting that state's law, the party has purposely availed itself of the benefits and protections of that state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 482 (1985).

Faced with the obvious import of the consent to jurisdiction clause in the contracts they signed, Duerr and Tilley are left to argue that the court should not enforce those provisions. In support of this argument they cite M/S Bremen v. Zapata Off-Shore Company, 407 U.S. 1, 12-15 (1972), in which the Supreme Court held that forum selection and consent to jurisdiction clauses should control unless there is a strong showing that [they] should be set aside. Enforcement of forum election provisions that have been obtained through freely negotiated agreements and are not unreasonable and unjust does not offend due process. Burger King, 471 U.S. at 472 n.14. Such a clause is enforceable unless: (1) its incorporation into the contract was the result of fraud, undue influence or overweening bargaining power; (2) the selected forum is so gravely difficult

and inconvenient that [the complaining party] will for all practicable purposes be deprived of its day in court; or (3) enforcement . . . would contravene a strong public policy of the forum in which the suit is brought declared by statute or judicial decision." AAR International Inc. v. Nimelias Enterpises, S.A., 250 F.3d 510, 525 (7th Cir. 2001).

Duerr and Tilley focus on factor No. 1, arguing that their execution of the SIP agreement and the notes in question was the result of the undue influence and overweening bargaining power of Comdisco. To support this argument they each submit a declaration in which they state that they received the SIP documents on Friday, January 30, 1998. Tilley received them at the California meeting while Duerr received them in Germany. The documents Duerr received were in English, a language in which Duerr claims not to be fluent. Each defendant was required to return the executed SIP Option Exercise Form by the following Sunday. Both Duerr and Tilley state that they "understood" that if they did not participate in the SIP program they would not be viewed as a "team player" at Comdisco. Thus, both argue that because they were given only the weekend to consider over 100 pages of documents which, in Duerr's case, were not translated into his native language[2], their consent to join the SIP is the result of overweening bargaining power.

The court disagrees with defendants' conclusions, but even if they are correct that their agreement to participate in the SIP was somehow tainted, there is simply no evidence that the forum selection/consent to judgment clauses were inserted into the notes as a result of some disparity in bargaining power. Under the Bremen analysis, it is the inclusion of the forum

---

[2]Duerr's affidavit states that he was "was not fluent in English," not that he could not read the terms of the documents. Nor does Duerr deny that he was unable to understand that he was indebting himself to $1.1 million in liability by signing.

7

selection clause that must be the result of overweening bargaining power, not simply the defendants' decision to enter the entire contract. Bremen, 407 U.S. at 12-13. To invalidate the clause, defendants must not merely show a fraudulent transaction, but fraud that goes to the selection of the forum. Rosenthal & Co., 1987 WL 13606 at *4. The mere inequality of bargaining power does not render every term of a contract unenforceable. RBC Mtg. Co. v. Couch, 274 F.Supp.2d 965, 970 (N.D. Ill. 2003).[3]

Moreover, as noted, the court disagrees with defendants' assertions that they were somehow pressured into participating in the SIP and signing the notes. Both Duerr and Tilley received the SIP package on January 30, 1998. That package contained a draft example of the proposed promissory note, which clearly and conspicuously contained the clauses in question. Although each agreed to participate in the SIP within the weekend time period, each had and took an additional ten days to execute the actual note. Therefore, each had more than enough time to review the terms of the note and discuss it with counsel. It simply strains credulity to suggest that Duerr and Tilley would sign notes indebting them for over $1 million and $500,000, respectively, without giving it any thought. The fact they felt pressured to do so is all the more reason simply to say no. The SIP documents clearly state that the plan is voluntary, and if defendants had any concern at all about the note or the plan they simply could have refuse to sign. The due process clause does not protect persons against their own failure to read the

---

[3]Defendants may continue to litigate their defenses that their participation in the SIP and their execution of the notes were the result of fraud or overweening bargaining power, thereby invalidating the contract as a whole, but that does not effect this court's determination of whether defendants are subject to personal jurisdiction of the court.

contracts they sign. Id. at *3 (citing National Equipment Rental, Ltd. v. Szukhent, 375 U.S. at 311, 316 (1964)).

Accordingly, the court concludes that the notes contain valid consents to jurisdiction and that it has personal jurisdiction over both Duerr and Tilley. Additionally, because the clauses contain language providing that the borrower irrevocably waives any objection to jurisdiction and venue in this court, the determination that the clause is valid under Bremen requires denial of defendants' motion to dismiss on forum non conveniens grounds, AAR, 250 F.3d at 526-27.[4]

Finally, the court rejects defendants' argument that the case should be dismissed on principles of comity.

> 'Comity' summarizes in a brief word a complex and elusive concept – the degree of deference that a domestic forum must pay to the act of a foreign government not otherwise binding in the forum. Since comity varies according to the factual circumstances surrounding each claim for its recognition, the absolute boundaries of the duties it imposes are inherently uncertain. However, the central precept of comity teaches that, when possible, the decision of foreign tribunals should be given effect in domestic courts, since recognition fosters international cooperation and encourages reciprocity, thereby promoting predictability and stability through satisfaction of mutual expectations. The interests of both forums are advanced – the foreign court because its laws and policies have been vindicated; the domestic country because international cooperation and ties have been strengthened. The rule of law is also encouraged, which benefits all nations.

Laker Airways Ltd. v. Sabena Belgian World Airlines, 731 F.2d 909, 937 (CA DC 1984).

Comity ordinarily requires that courts of a separate sovereign not interfere with concurrent proceedings based on the same transitory claim, at least until a judgment is reached in

---

[4]Neither Duerr nor Tilley can establish that trial in this court will be so gravely difficult and inconvenient that they will for all practicable purposes be deprived of their day in court, particularly since each is represented by the same counsel that represents at least 10 other defendants in these cases, and most all defenses are common to all defendants. Bonny v. Society of Lloyds, 3 F.3d 156, 160 (7th Cir. 1993).

one action allowing res judicata to be pled in defense." Id. at 934. In the instant case, however, there are no concurrent proceedings pending in Germany or the U.K. to which this court could defer and, given the court's conclusion that it has jurisdiction over defendants and that Illinois law applies to the contracts, there is no reason not to proceed in this court. Accordingly, defendants' motion to dismiss based on comity is denied.

## CONCLUSION

For the reasons set forth above, defendants Duerr and Tilley's motion to dismiss the first amended complaint are denied.

**ENTER:** **June 20, 2006**

_____
**Robert W. Gettleman**
**United States District Judge**